Case 1:23-mj-02311-ADC   Document 1-1   Filed 09/01/23   Page 1 of 7

✓ FILED        ___ ENTERED
___ LOGGED     ___ RECEIVED

8:17 am, Sep 01 2023
AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ Deputy

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Criminal No. 23-2311-ADC |
| ERIC TANO TATAW, | : | Under Seal |
| Defendant. | : | |

...oOo...

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Kyle Zgraggen, being duly sworn, depose and state as follows:

1. I am a Special Agent with the United States Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), and have been so employed since July 2022. I am currently assigned to the National Security/Document and Benefit Fraud Task Force in the HSI Baltimore Field Office. My responsibilities include enforcing federal criminal statutes involving immigration and customs-related violations, along with other violations of United States Code, including violations related to witness tampering and obstruction of justice. From 2010 – 2022, I was previously employed as a Special Agent with the Social Security Administration, Office of the Inspector General (SSA-OIG) in Baltimore, Maryland and Boston, Massachusetts. I am a graduate of the Criminal Investigator Training Program, the Inspector General Training Program, and the HSI Special Agent Training Program, all taught at the Federal Law Enforcement Training Center in Glynco, GA. I obtained a bachelor's degree in communications from the University of Maryland, College Park.

2. I have participated in numerous criminal investigations, including investigations which

1

have involved the obstruction of justice, bribery, and false statements. I have frequently interviewed or debriefed witnesses, cooperating individuals, defendants, and other individuals as part of criminal investigations and prosecutions. I am familiar in ways which individuals may attempt to obstruct and hinder criminal investigations, or tamper with the testimony of witnesses, informants, or victims.

3.  This Affidavit is submitted in support of a Criminal Complaint charging Eric Tano TATAW (hereinafter "TATAW") with violations of Title 18 U.S.C. § 1512(b)(1), that is, tampering with a witness with the intent to influence the testimony of the witness in an official proceeding, and the issuance of an Arrest Warrant.

4.  Because this Affidavit is offered for the limited purpose of establishing probable cause to support the Criminal Complaint and Arrest Warrant , it contains only a summary of relevant facts. I have not included details of every aspect of this investigation to date. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for issuance of the criminal complaint. The information contained in this Affidavit is based upon my personal knowledge of and participation in the investigation, a review of documents and other evidence, and conversations with other law enforcement officers and other individuals. All conversations and statements described in this Affidavit are related in substance and in part unless otherwise indicated.

**PROBABLE CAUSE:**

5.  HSI, along with other law enforcement agencies, has been conducting an investigation of TATAW for violations of various federal offenses, including wire fraud and Paycheck Protection Program (PPP) loan fraud. The investigation to date has obtained evidence that TATAW applied for PPP loans in the name of his company, National Telegraph, LLC, in

which he provided materially false information regarding the number of his employees, the amount of monthly payroll paid to the employees, and the annual revenue of his business. As a result of the fraudulent applications, National Telegraph was approved for two PPP loans totaling over $163,000 in 2020 and 2021. The evidence also indicates that TATAW used at least a portion of these funds on impermissible personal expenditures rather than payroll and business expenditures that are permitted by PPP rules and regulations.

6.      On August 18, 2023, I served Witness 1 with a grand jury subpoena that directed Witness 1 to produce certain documents and appear to testify before a Federal grand jury sitting in Baltimore, Maryland, on August 29, 2023. At the time of service of the subpoena, I also provided Witness 1 with my telephone number and contact information.

7.      On August 27, 2023, at approximately 7:45 p.m., I received a telephone call from Witness 1. Witness 1 told me that TATAW had recently contacted Witness 1. Witness 1 further stated that TATAW told Witness 1 what to say when testifying before the grand jury. Witness 1 advised me that the things that TATAW directed Witness 1 to say were false, including that Witness 1 had been an employee of National Telegraph. Witness 1 also indicated that TATAW told several other individuals who had been subpoenaed to appear before the same grand jury on August 29, 2023, that they should make false statements in their testimony as well. Witness 1 also told me that Witness 1 had recorded the conversation with TATAW.

8.      On August 28, 2023, at approximately 1:57 PM, I called Witness 1 in order to obtain more information about the contact with TATAW and the type of device that Witness 1 had used to record the encounter with TATAW. During this conversation, Witness 1 told me that TATAW and another individual had met with Witness 1, and separately with others scheduled

to testify in the grand jury, after Witness 1 had been served with the subpoena, and that TATAW had told them what to say and produce to the grand jury in response to the subpoena. In addition to the recording of the encounter with TATAW, Witness 1 advised that Witness 1 had recorded conversations with other witnesses scheduled to appear in front of the grand jury. Witness 1 also told me that TATAW had given Witness 1 fake documents that he wanted Witness 1 to produce to the grand jury in response to the subpoena.

9. On August 29, 2023, Witness 1 appeared at the United States Courthouse in Baltimore and voluntarily provided an interview to law enforcement prior to the scheduled grand jury appearance. During the interview, Witness 1 stated that approximately four days after being served with the grand jury subpoena, Witness 1 was visiting an acquaintance at a local office when TATAW and another individual unexpectedly arrived and approached Witness 1.[1] Witness 1 reported that TATAW stated that Witness 1 needed to "save him" by telling the grand jury that Witness 1 had been an employee at National Telegraph. TATAW told Witness 1 that he would present Witness 1 with documents and instructed Witness 1 to amend Witness 1's taxes.

10. Witness 1 further reported that on August 25, 2023, TATAW and another individual unexpectedly arrived at the house of Witness 1's friend while Witness 1 was at the house, and again approached Witness 1. TATAW handed Witness 1 two purported National Telegraph "Statements of Earnings," which listed pay dates of April 3, 2020, and April 17, 2020, respectively. Both Statements of Earnings were in Witness 1's name, reflected that Witness 1

---

[1] Prior to this encounter, Witness 1 had not seen TATAW for the past year. Witness 1 also advised that he was on full Supplemental Security Income disability, but that he had done some work for TATAW's other company in the past in exchange for small cash payments that he had not reported to the Internal Revenue Service or the Social Security Administration.

4

had worked 80 hours and was paid $1,760 for each two-week reporting period. TATAW directed Witness 1 to produce those Statements of Earnings to the grand jury. TATAW further told Witness 1 to file an amended tax return for 2020, to report that Witness 1 had received wages from National Telegraph.

11.     Witness 1 advised that Witness 1 had never been employed by National Telegraph and had never seen the two Statements of Earnings before TATAW handed them to Witness 1. Witness 1 gave me the two Statements of Earnings as well as a variety of other documents that Witness 1 had brought in response to the subpoena.

12.     Witness 1 also brought the recording that Witness 1 had made of the conversation with TATAW on or about August 25, 2023, described above in paragraph 10. Witness 1 explained that Witness 1 had decided to record the conversation independently without any receiving any instructions or directions from anyone to do so, including law enforcement or the government.

13.     During the interview, Witness 1 also advised that the previous evening, August 28, 2023, TATAW again approached Witness 1. Witness 1 explained that an acquaintance had contacted Witness 1 that evening and requested that Witness 1 go with him to pick up a rental car at a residence. Upon arriving at the particular residence, however, there was no rental car. Instead, Witness 1's acquaintance directed Witness 1 to go into the residence where TATAW and another individual were waiting. When Witness 1 told TATAW that Witness 1 was going to tell the truth in the grand jury, TATAW and the other individual became angry, called Witness 1 a fool, and said that Witness 1 would see what happens after Witness 1 testified in front of the grand jury. Witness 1 indicated that TATAW and the other individual got close to Witness 1's face during the encounter and appeared ready to beat Witness 1.

14.     Witness 1 then testified in the grand jury later in the day on August 29, 2023. During

that testimony, Witness 1 stated that during the encounter with TATAW the previous evening, TATAW gave Witness 1 $1,700 in cash. Witness 1 explained that TATAW had owed that money to Witness 1 since 2020, but had failed to pay it back in spite of repeated requests from Witness 1. TATAW and the other individual also pushed and yelled at Witness 1 during the encounter.

15.     On August 30, 2023, I listened to the recording provided by Witness 1.  I recognized Witness 1's voice, which I am familiar with from having spoken to Witness 1 multiple times. I also recognized TATAW's voice, which I am familiar with as a result of watching over twenty videos and recordings of TATAW speaking during the course of the underlying criminal investigation[2].  Among other things, TATAW can be heard on the recording specifically directing Witness 1 to testify in the grand jury that Witness 1 had worked for National Telegraph from January 2020 until March 2020.  TATAW also instructed Witness 1 to tell the grand jury that Witness 1 had filed an amended tax return for 2020, using a false National Telegraph W-2 form that TATAW would provide.  TATAW also instructed Witness 1 how to respond in the grand jury if asked about TATAW's other business, if TATAW has an army, about TATAW's role in the Cameroonian separatist movement, or about various kidnappings and acts of violence in Cameroon. [3]

## CONCLUSION:

14.     Based on the foregoing facts, I believe probable cause exists to support the issuance of a

---

[2] In the recording, Witness 1 also refers to TATAW as "Eric" several times.
[3] The spoken language in the recording is a mix of English and West African Pidgin language, and parts of the conversation are difficult to hear due to the quality of the recording.  A summary translation of the recording was provided to me by another law enforcement officer who is fluent in West African Pidgin.  While I was unable to understand the entirety of the conversation, the statements in paragraph 15 were specifically heard by me or recorded in the summary translation.

6

Criminal Complaint charging TATAW with violations of Title 18 U.S.C. § 1512(b)(1), that is, tampering with a witness with the intent to influence the testimony of Witness 1 before the grand jury in an official proceeding and the issuance of an Arrest Warrant.

                                                          Respectfully submitted,

                                                          *Kyle Zgraggen*
                                                          Kyle Zgraggen
                                                          Special Agent
                                                          Homeland Security Investigations

Affidavit submitted by email and attested to me as true and accurate by telephone pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3) on the 31st day of August, 2023.

                                                          *A. David Copperthite*
                                                          The Honorable A. David Copperthite
                                                          United States Magistrate Judge